266 So.2d 318

Herbert **ELLIOTT**

v.

**STATE.**

Lonnie **JOHNSON**

v.

**STATE.**

Calvin **MEANS**

v.

**STATE.**

I Div. 141, 142 and 143.

Court of Criminal Appeals of Alabama.

May 9, 1972.

Rehearing Denied June 30, 1972.

Kenneth Cooper, Bay Minette, Delano Palughi, Mobile, for appellants.

**516**

William J. Baxley, Atty. Gen., and Don C. Dickert, Asst. Atty. Gen., for the State.

PRICE, Presiding Judge.

The appellants were separately indicted, tried and convicted for rape. They are charged with having committed the crime on the same occasion upon the same victim. Separate records are filed on appeal, but since we are of opinion all three cases are due to be reversed, and some of the questions raised are common to all, they are treated together. See Stone v. State, 243 Ala. 605, 11 So.2d 386.

Although the evidence presented was identical in each case, Johnson's sentence was 20 years; Means was 75 years and Elliott's life imprisonment.

The evidence for the state tended to show that around midnight April 18, 1970, the prosecuting witness, an eighteen year old white woman, attempted to turn onto Belforest Road near Fairhope, but due to heavy fog, her automobile ran into a ditch.

Shortly thereafter an automobile in which seven young Negroes were riding stopped and five males got out and tried to push the automobile out of the ditch but were unsuccessful. Meanwhile another car with defendants Means and Johnson in it stopped, and Means got into the prosecuting witness's car and tried to start it. The girl, becoming alarmed at something that was said or done, said she was going home to get her father to pull her car out of the ditch. She took the keys and started walking toward Fairhope. When she was a short distance down the road she heard someone running behind her and heard someone say "catch her." She was grabbed by the arms and legs and taken onto a dirt road and raped by four men. She could not identify either of the defendants as being the persons who raped her.

The defendants testified as witnesses and each denied having sexual relations with the prosecuting witness.

State's witness Leon Newman testified that he, Richard Bradley and Herbert Elliott were riding in the first automobile that stopped near the car that was in the ditch. He further stated that when the prosecuting witness started walking toward

Fairhope, Richard Bradley, Herbert Elliott, Calvin Means and Lonnie Johnson followed her. It was too foggy to see where they went, but he heard the girl screaming and he hid behind a bush.

■ Verbal confessions allegedly given by all three defendants were testified to by the law enforcement officers. In each case the investigating officers were allowed to testify, over objection that the defendant's confession was freely and voluntarily made. This was error. See *Hunt's* case, Hunt v. State, 135 Ala. 1, 33 So. 329; Blythe v. State, 24 Ala.App. 142, 131 So. 457; Jones v. State, 156 Ala. 175, 47 So. 100; Warren v. State, 44 Ala.App. 221, 207 So.2d 916, cert. denied, 281 Ala. 725, 205 So.2d 920.

The prosecuting witness testified she was examined by a gynecologist, Dr. Hogan, in Mobile, a day or so after the alleged rape.

■ In *Johnson* and *Means* the sheriff of Baldwin County was allowed, over objection, to testify that a subpoena was issued for Doctor Hogan in Mobile, Mobile County, but that it could not be served because Doctor Hogan was out of town. This testimony was inadmissible as a conclusion and was hearsay. Burrow v. State, 23 Ala.App. 99, 121 So. 449.

Also, in *Johnson* the court erred in overruling the defendant's objection to the district attorney's explanation to the jury the reason for Doctor Hogan's absence from the trial.

Appellant Elliott denied following the prosecutrix when she left the automobile, but testified that after they were unable to get the car out of the ditch he walked to Daphne to telephone for a wrecker, but could not find anyone to get change to operate the pay telephone. During his cross examination he was asked how long it took to walk to Daphne and back. His answer was about 25 minutes. Thereupon the following occurred:

"Q. Did you hear Leon Newman say how long this lasted?

"A. Leon Newman lied.

"Q. Are you saying the Sheriff lied?

"A. I didn't tell him that.

"Q. You are saying Mr. Garner lied?

"MR. COOPER: I object to this line of questioning—the manner in which he is asking the question; he is trying to get him to say the Sheriff was lying and—the court ruled—

"THE COURT: He called one of his witnesses a lie; I overrule the objection.

"MR. COOPER: Except.

"Q. Is that right?

"A. Right.

"Q. So all of the people that took the stand and testified against you have lied about it?

"A. That is right, because I didn't do anything."

■ A question of whether or not a witness has told the truth calls for a conclusion and is invasive of the jury's province. Wright v. State, 149 Ala. 28, 43 So. 575; Miller v. State, 21 Ala.App. 261, 107 So. 226; Haynes v. State, 40 Ala.App. 106, 109 So.2d 738.

In the following cases the Supreme Court of South Carolina held that it is reversible error to permit the district attorney in the cross examination of the accused, or a witness for him, to ask whether or not another witness has told the truth, because to do so would force such witness to directly attack the veracity of the other witness; State v. Outen, 237 S.C. 514, 118 S.E.2d 175; State v. Hariott, 210 S.C. 290, 42 S.E.2d 385; State v. Warren, 207 S.C. 126, 35 S.E.2d 38.

In *Means*, Sheriff Taylor Wilkins was examined on voir dire out of the presence

of the jury concerning an alleged confession given by defendant in the presence of the witness and Chief Deputy Garner. On cross examination the witness stated he didn't know whether Mr. Garner had talked with the defendant before this conversation.

Chief Deputy Willard Garner was then called as a witness by the state and on voir dire, in the absence of the jury, he was asked by defense counsel whether he had talked with the defendant before the sheriff came in. The witness stated he did not talk to Means out of the presence of the sheriff. Thereupon the following occurred:

"MR. COOPER: I have no more questions from this witness, but I would like to put the defendant on the stand.

"THE COURT: What good does that do?

"MR. COOPER: Because it is the defense's position here that the defendant said he was questioned by Mr. Garner before Mr. Wilkins ever came down and that Mr. Garner made a statement that scared him and he was still scared when he went down the second time and he was under fear.

"THE COURT: I don't see what good that will do to tell it to me.

"MR. COOPER: I want to rule on the voluntariness of the statement.

"THE COURT: Do you think I am going to rule that Mr. Garner and the Sheriff lied about this?

"MR. COOPER: No.

"THE COURT: You are just wasting time. Go ahead and put him on.

"MR. COOPER: I except to the Court's remarks, and because of those remarks we will not put the defendant on the stand."

 Although defendant was not absolutely refused permission to take the stand, as was done in Harris v. State, 280 Ala. 468, 195 So.2d 521, the trial judge should avoid the appearance of having prejudged any testimony offered by the accused tending to show that the confession was not voluntarily made. We are of opinion the court's remarks were inherently prejudicial.

For the reasons set out hereinabove, the judgment in each case is reversed and the cause remanded.

Reversed and remanded.

CATES, ALMON and TYSON, JJ., concur.